COLBY HALL v. MANUFACTURERS COAL AND COKE COMPANY, Appellant.

In Banc, July 2, 1914.

1. NEGLIGENCE: Contributory: Safe Place to Work: Demurrer to Evidence. The evidence for plaintiff tends to show that defendant's foreman came into the mining room in which plaintiff was the sole worker and plaintiff asked him if he thought more of the roof would fall. After inspecting the part of the roof that afterwards fell the foreman assured the plaintiff that the roof was sound and safe. Plaintiff was somewhat inexperienced, was not familiar with the kind of rock in the roof, but thought the foreman would know. Relying on his assurance of safety plaintiff continued to work in the room,

and within two hours thereafter a large slab fell and injured him. Expert miners testified for the plaintiff that the slab was of a kind that became-loosened slowly and gradually and that a proper inspection by the foreman would have disclosed that the rock was liable to fall. On the other hand plaintiff's evidence tended to show that, ordinarily, it was the duty of the plaintiff to look out for his own safety in the room in which he worked and that the duty of defendant was to furnish such props as might be required to prop the roof. *Held*, that it could not be said that plaintiff was guilty of contributory negligence as a matter of law, and that the trial court did not err in overruling a demurrer to the plaintiff's evidence in an action for damages.

2. ———: ———: ———: Negligent Assurance: Instructions. Where plaintiff's claim for damages, as disclosed by his petition and evidence, is based on the negligent assurance of defendant that the roof of the mining room in which he worked was safe, an instruction undertaking to cover the whole case was erroneous which did not require the jury to find that the assurance was negligently given, and this error was not cured by the giving of another instruction which undertook to set forth what facts would constitute a negligent assurance.

3. ———: ———: ———: ———: Reliance Thereon: In-structions. An instruction that although the jury might believe that the plaintiff knew, or by the exercise of ordinary care might have known, that the mining room in which he worked was not safe, yet this did not defeat a recovery if they found that he was negligently ordered into the room, and the danger was not such as to threaten immediate injury, is criticised for failure to require a finding that plaintiff relied upon the assurance of safety.

4. ———: ———: ———: Injury not Disputed: Instructions: Assumption of Suffering, etc. Where the fact of plaintiff's injury is not disputed, an assumption, in an instruction, of his suffering, injury and loss of time, is not error.

5. PLEADING: Special Damages. Special damages, which are the natural but not necessary result of the injury complained of, must be specifically alleged in the petition.

6. ———: ———: Negligent Injury: Impotence. Under allegations in the petition in a personal injury case, that plaintiff's body was severely and permanently wounded, torn and mangled, that his hips, pelvis, legs and ankles were broken and torn, that he is permanently injured, and that he will always suffer great bodily pain, etc., evidence was not admissible to show that his injuries had rendered him impotent. Impotency in such case is a matter of special damages that must be specifically alleged. [Overruling, in part, Gurley v. Railroad, 122 Mo. 141, and Moore v. Transit Co., 226 Mo. 689.] [LAMM, C. J., and WOODSON, J., dissenting.]

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart*, Judge.

REVERSED AND REMANDED.

*Campbell & Ellison* and *Higbee & Mills* for appellant.

(1) The court erred in admitting evidence of plaintiff's impotency and loss of sexual desire, because not pleaded, and not shown to be a natural result of the injury. Dr. Nunn testified he could not say that the injuries caused impotency. Moore v. Transit Co., 226 Mo. 698. (2) The court erred in overruling the defendant's demurrer to the evidence at the close of plaintiff's case. Plaintiff testified Shaw made the usual inspection of the roof; it was solid. Shaw's test was made in the usual and customary manner and was sufficient, especially as he had the right to assume that plaintiff was an experienced miner. No inference of negligence arises from the fact that the rock fell. The master is not an insurer. Later plaintiff made the same test, with the same result. The defect was latent. Shaw's test was made two or three hours before the rock fell. Plaintiff was engaged as a day man, not as a miner, when hurt. His duty was to make dangerous places safe. It was an assumed risk. If he had been an experienced miner he would not have been injured. 26 Cyc. 1139; Stanley v. Railroad, 59 N. W. (Mich.) 393. The master is not liable for latent defects. 26 Cyc. 1145; Howard v. Railroad, 173 Mo. 524; Bohn v. Railroad, 106 Mo. 429; Beunett v. Lumber Co., 116 Mo. App. 699. (3) The court erred in giving plaintiff's instruction 1. (a) It purports to cover the entire case and ignores the issue of plaintiff's contributory negligence. No instruction was given on that issue. It was equivalent to instructing the jury there

was no evidence of contributory negligence. McMahon v. Ex. Co., 132 Mo. 649; Raybourn v. Phillips, 160 Mo. App. 534; Hill v. Drug Co., 140 Mo. 433; Scanlan v. Gulick, 199 Mo. 449. (b) It erroneously predicated plaintiff's right to recover if "the said foreman negligently directed plaintiff to clean up the rock and other debris," etc., without defining or advising the jury what constituted negligence. There was no definition of actionable negligence in any instruction. Raybourn v. Phillips, 160 Mo. App. 551. (4) The court erred in giving plaintiff's instruction 2. Williams v. Coal Co., 127 S. W. 1000. (5) The court erred in giving plaintiff's third instruction. Britt v. Crebbs, 158 S. W. 65. (6) The court erred in giving plaintiff's fourth instruction. It was equivalent to advising the jury that in the opinion of the court there was evidence authorizing them to find that some witness or witnesses for defendant were guilty of perjury. The evidence did not authorize it. Schmidt v. Railroad, 149 Mo. 289; Bank v. Murdock, 62 Mo. 74; White v. Maxey, 64 Mo. 559; McCormick v. Monroe, 64 Mo. App. 201; Sampson v. Railroad, 156 Mo. App. 425. (7) The court erred in giving plaintiff's fifth instruction. (a) It assumes pain and suffering, loss of time and service since plaintiff's recovery. (b) It authorizes the jury to assess plaintiff's damages in their discretion without regard to the evidence.

*Fugate & Son* and *Charles E. Murrell* for respondent.

(1) There is no plea of contributory negligence contained in defendant's answer. Ramp v. Met. St. Ry., 133 Mo. App. 700; Cain v. Wintersteen, 144 Mo. App. 1; White v. United Ry. Co., 157 S. W. 593. (2) Appellant's fifth assignment of error is that the court erred in admitting the evidence of plaintiff's impotency because the same is not pleaded and because it

was not a natural result of the injuries. The court in
the case of Moore .v. Transit Co., 226 Mo. 689, holds
that all injuries which naturally result from the main
or specific injury alleged, may be shown without be-
ing specially pleaded and held that impotency could
be shown under the above allegation. The petition in
the case at bar we contend is broad enough to per-
mit the introduction of plaintiff's impotency. There
are many cases in Missouri holding that resulting in-
firmities from injuries may be shown under a general
averment though not specially pleaded, among which
are: Fleddermann v. Transit Co., 134 Mo. App. 199;
Wilbur v. Railroad, 110 Mo. App. 688; Vancleve v.
Railroad, 124 Mo. App. 224. In the Vancleve case
plaintiff was permitted to prove and recover for hem-
orrhages of the lungs and pulmonary consumption un-
der the allegation that the plaintiff's "Breast bon-
was broken, her chest bruised and crushed and that
she was permanently wounded." We contend that
plaintiff's impotency is shown by the evidence to be
the natural result of the character of injury received by
him. Epstein v. Railroad, 143 Mo. App. 135. Appel-
lant complains that the trial court did not sustain its
demurrer at the close of plaintiff's case. Under this
heading appellant misstates the testimony as shown
by the record. Plaintiff does not testify that Shaw
made the usual inspection of the roof. Plaintiff says
that he sounded the rock right over plaintiff's head in
the usual manner, while if the testimony of the wit-
nesses are to be believed this slab of rock nine feet
wide and eleven. feet long could have been sounded
by. Shaw and its dangerous condition ascertained had
he examined the roof of the room. Shaw's test was
not made in the usual and customary manner or he
would have sounded other places in the roof other
than directly over plaintiff's head. We take this to
be a matter of common knowledge. It is not true as
stated by appellant that plaintiff made the same test

that Shaw did with the same result. There is no evidence that plaintiff tested this rock or the roof in the room on the morning of the injury. The evidence is to the contrary. Neither is it true that Shaw's test was made two or three hours before the rock fell. Finally appellant contends that if respondent had been an experienced miner he would not have been injured; then it is fair to presume that if Shaw had been an experienced and competent foreman that plaintiff would not have been ordered into a place of danger and injured. We submit that plaintiff made a submissible case. Carter v. Baldwin, 107 Mo. App. 217; Lackland v. Coal Co., 110 Mo. App. 634; Swaringen v. Mining Co., 212 Mo. 524; Fisher v. Lead Co., 156 Mo. 479. It is contended by respondent that all of the instructions given on behalf of respondent were erroneous because they ignored the issue of plaintiff's contributory negligence. As heretofore stated the question of contributory negligence is not in this case. There is no allegation in plaintiff's petition that he was in the exercise of ordinary care and no allegation in defendant's answer that respondent was guilty of negligence contributing to his injury. See cases cited under Point (1). This question is decided adversely to appellant in the recent case of White v. United Rys., 157 S. W. 593. Respondent's instructions are in practically the same form as instructions in case of Carter v. Baldwin, 107 Mo. App. 217. The case at bar is on all fours with the Carter case and the court says "The instructions given are in harmony with the view herein expressed and we think correctly present the law to the jury." Lackland v. Coal Co., 110 Mo. App. 634; Swaringen v. Mining Co., 212 Mo. 524; Hammond v. Coal & Coke Co., 156 Mo. 232; Sheperd v. Railroad, 189 Mo. 362; Clippard v. Railroad, 202 Mo. 432.

WILLIAMS, C.—This is an action to recover damages for personal injuries received by plaintiff while working in defendant's coal mine near Novinger, Missouri. Suit was instituted in Adair county and on change of venue was sent to Knox county where trial was had resulting in a verdict and judgment in favor of plaintiff in the sum of $23,666. That portion of plaintiff's petition charging negligence is as follows:

"The defendant negligently, carelessly and recklessly set him to work in one of the rooms in said Mine number 50, known as room number 4 off the 10th west entry off the main south entry, at a place in said room where the rock, earth and other materials forming the roof of said room were in a loose and dangerous condition and liable to fall at any time; and did negligently, carelessly and recklessly fail and neglect to warn or notify the said plaintiff that the roof of said room, at the point and place where plaintiff was compelled to be in order to perform the work as directed, was in a loose and dangerous condition as aforesaid; but said defendant, its agents, employees and mine foreman did carelessly, negligently and recklessly assure this plaintiff that the roof of said room at the place aforesaid was in a safe and secure condition, and this plaintiff believing said foreman possessed superior knowledge of said roof, relied upon said statement and assurance and set about the work as directed; and this defendant had negligently, carelessly and recklessly failed and neglected to furnish and provide a safe, competent and proper man in charge of said room, and did negligently, carelessly, and recklessly fail and neglect to furnish and provide safe, competent and proper men in charge of said mine as mine foreman, and did negligently, carelessly and recklessly fail and neglect to furnish the said plaintiff with a reasonably safe, sufficient and proper place in which to perform his duties, and did negligently, carelessly and recklessly fail and neglect to warn or notify the said plaintiff of the

dangers of working in said room, this plaintiff being then and there an inexperienced miner, and ignorant by reason thereof of the dangers lurking in said roof of said mine, which said facts the defendant well knew or by the exercise of ordinary care could have known.''

The petition further alleges that by reason of the negligence and carelessness of the defendant, as above stated, and without any warning to him, a large slab of rock from the roof of said mine fell upon plaintiff. Defendant's answer contained, (1) a general denial, (2) that plaintiff's injury ''was due *solely* to his own negligence and carelessness in not properly taking care of and securing said room and the roof thereof,'' (3) plea of assumed risk.

Plaintiff's evidence tended to establish the following facts: At the time plaintiff was injured he was working in said mine in a room which was about twenty feet wide and fifty feet long; the roof of the room being a short distance above plaintiff's head. While he was at work picking up some loose rock from the floor of this room, a slab of rock, nine feet wide and about eleven feet long and varying in thickness from a ''feather edge'' to eighteen inches, fell from the roof of the mine upon him. Prior to the accident, plaintiff had worked in this room about three and one-half days, three days of the time being spent in the work of digging coal. On the day preceding the day of the accident, plaintiff set 33 props under the roof in this room and drilled some holes and loaded them with powder. After he left the mine that day, these holes were fired, as was the custom, by the shot-firers. The next morning (the day that the injury occurred) plaintiff returned to the mine about 6:30 a. m., and after warming himself in the boiler room went down into said mine and to said room. Upon arriving there he found that during the night a considerable quantity of rock had fallen from the roof of the room and that the props had fallen (caused, possibly, by the firing

of the shots). It was the custom in the mine that loose rock that fell from the roofs of the different rooms was cleaned up and taken away by special men which the company had in their employ for that work. Defendant's foreman came into plaintiff's room that morning and commented on the amount of loose rock that was down and told the plaintiff to clean out ''a couple of cars of coal in front'' and that then the company would clean up the rock. To this plaintiff said ''all right'' and then asked the foreman if he (the foreman) thought any more of the roof would fall. In answer to this question, the foreman took plaintiff's pick and tested the roof above the place where plaintiff was working and after sounding the roof told the plaintiff that it was sound and safe. This was about an hour and a half or two hours prior to the accident. After the foreman left the room, plaintiff cleaned up the two cars of coal and then went to see a Mr. Batley, who was then in the employ of defendant to do the special work of cleaning up the fallen rock from the rooms. Upon being asked by plaintiff as to when he could come and clean up said rock, Batley replied that he could not get to it that day and directed plaintiff to go and see the foreman, Mr. Shaw, about it. Plaintiff thereupon called upon and requested the foreman to get some one else to do the work of cleaning up the loose rock. The foreman made the proposition to plaintiff that he (plaintiff) clean up the loose rock and that the company would pay him ''extra'' for doing that work. To this plaintiff agreed; returned to his room and started to clean up the loose rock. After having picked up five or six pieces of rock and while he was in the act of lifting another piece the slab fell upon him. The slab fell from that portion of the roof which the foreman had just previously inspected. The slab gave no warning of its breaking away. Plaintiff testified that he did not know that the roof was dangerous; he testified that he sounded the

roof and that it sounded solid to him—but it does not appear from the evidence as to the exact time that plaintiff sounded the roof; as to whether it was on the day of the accident, and after the foreman had sounded the roof, or during the three previous days that he worked in the room, or on the morning of the accident and before the foreman sounded the roof, the evidence is silent. Plaintiff further testified that he was not an experienced coal digger; that, while he had worked in the mines about four years at different times and places, most of his work had been driving mules in the mines, etc., and that he had had only about two months' experience in digging coal. He testified that he was not familiar with the character and formation of the rock in this mine and that when the foreman of the mine sounded the roof and told him it was sound and safe, he relied upon what the foreman said, because he thought the foreman "would know, if anyone would." By plaintiff's other witnesses it was shown that there was a defect in the formation of the rock in the roof of this room. The defect was known as a "clay slip" and that this kind of defect made a roof very dangerous and treacherous and that the air would get into the rock formation at this defective place and sometimes in the night and sometimes in a day and a half or two days the rock would loosen so that it would fall, depending upon the kind of rock and the conditions surrounding it. One of plaintiff's witnesses, an expert miner, testified that he examined the rock after its fall and that it was his opinion that the rock in question loosened by slow process and that the air would strike the rock where it broke and it "would gradually break away from the place where it was exposed to the air." Plaintiff's evidence further tended to show that if this rock had been examined one or two hours before it fell by a practical miner its dangerous and loose condition could have been ascertained. That if the roof is loose and dan-

gerous it will sound hollow and drummy, and that if it is solid, it will sound solid. The evidence tended to show that it was the duty of the miners to look after the safety of the roof in the rooms in which they worked. Plaintiff was receiving $2.56 a day for doing the kind of work he was doing at the time he was injured. As to plaintiff's injuries, the doctor testified that one of plaintiff's legs was broken and one foot was broken in the angle joint, causing two or three bones to protrude through the skin; that the bones of the pelvis were dislocated; that some of the nerves of the body were paralyzed and that plaintiff suffered severe pain and was confined to his bed about three months and that he considered plaintiff's injuries permanent. The plaintiff testified, as to his injuries, that he had suffered severe pain; that by reason of the injuries received he was confined to his bed thirteen weeks, and after that it was about four weeks before he could use crutches; that he then used crutches three months and after that and from June until October he moved about by the use of a cane and that at the time of the trial he was able to walk without the use of a cane; that the injuries affected his sleep and rendered him impotent and that as a result of the injuries he had practically lost his sexual desire. The doctor also testified that, if plaintiff was impotent, his impotency was, in his opinion, caused by the injuries. Defendant objected to the introduction of this evidence on the ground only that the petition did not allege an injury of that kind, which objection was overruled by the court and defendant excepted. Plaintiff testified that at the time of trial he was making three dollars a day working as a check-weighman; that his duty was to see that the company weighman correctly weighed the coal for the various miners; that during the summer he had endeavored to do some work shoveling on the streets; that he would be able to work one day if the work was not too heavy and would then

have to lay off the next day and that finally he had to quit the work because he could not stand it. The evidence on the part of defendant tended to show that it was the duty of the miner to look after his own room. Charles Batley testified that plaintiff came to him the morning of the accident and told the witness that the roof in his room was bad and that the rock was down and wanted him to come and look at it. Another of defendant's witnesses testified that after the accident plaintiff admitted to him that he was fixing a place to set a prop when the rock fell. Mr. Shaw, the defendant's foreman, at the time of the injury, testified for the defendant that he no longer worked for the defendant but was at present engaged in running a drug store. This witness denied that he was in the plaintiff's room on the morning of the accident and denied that he sounded the roof or that he told plaintiff the roof was solid and that the only talk he had with plaintiff on that day was when plaintiff came to him and he employed plaintiff to clean up the loose rock. This witness further testified that when he first showed plaintiff the room (which was about four or five days before the accident) he told plaintiff of the "clay slip" in the room and that the support must not be taken out from under the roof at that place.

Plaintiff's instructions numbered 1, 2, 3, 4 and 5, which are challenged by appellant, are as follows:

"1.  The court instructs the jury that if you believe from the greater weight of evidence in the cause: That at the time plaintiff was injured he was in the employ of the defendant company as a laborer in the ground of defendant's mine, and that he was in the charge of and under the control and direction of one D. P. Shaw, as mine foreman in said mine, and that said Shaw was employed by the defendant to act as such foreman; and if you further believe that as such foreman said Shaw had authority, and that it was his duty, to have charge of and direct the work and the manner

in which plaintiff was engaged at the time he was injured; and that it was the duty of the plaintiff to obey the orders and directions of said mine foreman as to the place and manner of doing the work in said mine at the time plaintiff was injured; that while so engaged and in obedience to the commands and directions of said mine foreman the said foreman negligently directed plaintiff to clean up the rock and other debris in room No. 4 referred to in plaintiff's petition and prior to said command had assured said plaintiff when inquired of, whether it was safe to work in said room on account of the top or overhanging rocks, that it was safe and that the plaintiff in obedience to said orders, and relying upon said assurance did go to work and commence to clean up the rock and other debris in said room and while in obedience to said orders he was in the discharge of the duty and work assigned him a large slab of rock fell from said top or roof which resulted in plaintiff's injuries then the plaintiff is entitled to recover in this action, unless precluded for some other reason assigned in the further instructions given you.

"2.   The court instructs the jury that notwithstanding you may believe from the evidence in the cause that the plaintiff knew, or by the exercise of ordinary care on his part could have known, that the position he was working in, at the time he was injured, in room 4, in question, was not a safe one, yet, this does not and should not defeat his recovery in this case; if you further find and believe from the evidence that he was negligently ordered into this position by the defendant's mine foreman, D. P. Shaw, and was assured by the said Shaw that the slab of rock that fell on plaintiff would not fall and that the danger from the said slab of rock overhanging said place was not of such glaring and dangerous nature as to threaten immediate injury in case he obeyed said order.

"3. The court instructs the jury that if you find and believe from the greater weight of the evidence in the cause that the slab of rock which fell upon and injured the plaintiff was in a loose and dangerous condition in the roof of room number 4 of defendant's mine number 50 on the morning of November 24, 1908, and that the defendant's foreman D. P. Shaw inspected and sounded the same and found the same to be loose and in a dangerous condition and liable to fall or if by the exercise of ordinary care on his part he could have discovered the loose and dangerous condition thereof by said inspection, if the same was in a loose and dangerous condition, if you find that he did so inspect said rock, and assured plaintiff that it would not fall and that after the said assurance on his part he ordered plaintiff to work in said room beneath said slab of rock, then said order was negligently made and said assurance was negligently given within the meaning of these instructions, unless the danger was of such a glaring nature that no prudent person, under the circumstances, would have obeyed the order.

"4. The court instructs the jury that they are the sole judges of weight and credibility of the testimony of the witnesses in this case and if they find and believe that any witness has wilfully sworn falsely to any material facts at issue in this case, then the jury are at liberty to disregard the whole or any part of such witness's testimony.

"5. The court instructs the jury that if you find the issues for the plaintiff, in determining the measure of damages, you may take into consideration the mental and physical pain and suffering endured by plaintiff since said injury in consequence thereof, the character and extent of said injury and its continuance, if permanent, together with his loss of time and service. And you may find for him in such sum as in the judgment of the jury, under the evidence, will be reasonable compensation for the injury, not to exceed

the sum of thirty-nine thousand, nine hundred dollars."

I. It is contended that the court erred in overruling defendant's demurrer to the evidence. In support of this contention appellant refers to defendant's evidence which is in conflict with the evidence offered by plaintiff. It is too well settled to need citation of authority, that in determining whether a demurrer to the evidence should have been sustained or overruled, defendant's evidence tending to show absence of plaintiff's right to recover cannot be considered, but the demurrer must be tested by the strength of plaintiff's evidence aided by any of defendant's evidence that may help make out plaintiff's case. And in passing upon the sufficiency of the evidence challenged by demurrer, the general rule is that plaintiff's evidence and "every reasonable inference of fact arising therefrom" is to be taken as true. [Stauffer v. Railroad, 243 Mo. 305, l. c. 316.] Proceeding, then, to a review of plaintiff's evidence, we find that defendant's foreman came into the mining room in which plaintiff was the sole worker and that while there plaintiff asked the foreman if he thought more of the roof would fall, thereby inferring that plaintiff had some doubt about the matter. In answer to this question, or request, the foreman took plaintiff's pick and undertook to inspect the roof for the purpose of determining its condition. The foreman inspected the part of the roof that afterwards fell and injured plaintiff and after making an inspection assured plaintiff that the roof was sound and safe. Plaintiff testified that he was somewhat inexperienced, was not familiar with the character of rock in the roof, but thought the foreman would know and relied upon the foreman's assurance; that relying on this assurance of safety, he continued to work in said room and in an hour or two

*Margin note: Safe Place to Work: Contributory Negligence: Demurrer to Evidence.*

thereafter the slab fell causing plaintiff's injuries. The testimony of expert miners, testifying in plaintiff's behalf, further tended to show that the slab in question became loosened slowly and gradually and that if a proper inspection of the roof had been made at the time the foreman made the inspection it could have been discovered that the rock was loose and liable to fall. The above facts were within the scope of negligence alleged in the petition and were sufficient to make defendant's liability a question for the jury's determination.

It is true that plaintiff's evidence tended to show that, ordinarily, it was the duty of plaintiff to look out for his own safety in the room in which he worked and that the duty of the defendant was to furnish such props as might be required for use in propping the roof. But even though, as a general proposition, this be conceded, yet, when defendant's vice-principal, the foreman, came into the room and in answer to plaintiff's question or request undertook or assumed the duty of making an inspection as to the safety or soundness of the roof it undoubtedly then (if not before) became the duty of the defendant to exercise ordinary care to ascertain the true condition of the roof and (at least) to inform plaintiff of the facts that an ordinarily careful inspection would have revealed.

In discussing a very analogous situation, involving the care that defendant should exercise in performing an assumed duty, the Supreme Court of Illinois in the case of Consolidated Coal Company v. Scheiber, 167 Ill. 539, l. c. 545, said:

"Whether, therefore, it was the duty of appellant (the defendant company) or not to prop the roof, still, if it assumed that duty and undertook to discharge it, and did so in such a careless manner that the roof was thereby loosened and rendered more liable to fall, and the plaintiff was in the exercise of due care for his own safety, as alleged and as necessa-

rily found by the jury, the appellant would be liable. *Having undertaken to perform the work it became its duty to perform it in a proper manner, whether bound in the first place to perform it at all or not.*" (Italics ours.)

The evidence in the case at bar does not show that the danger was so obvious and glaring that a reasonably prudent man would not have continued to work in said room and plaintiff testified that he relied upon the assurance of safety made by the foreman. Under the facts disclosed by the evidence it should not therefore be said that plaintiff was guilty of contributory negligence as a matter of law. [Swearingen v. Mining Company, 212 Mo. 524; Hamman v. Central Coal and Coke Company, 156 Mo. 232.] It follows therefore that the court did not err in overruling the demurrer to the evidence.

II. It is further contended that the court erred in giving plaintiff's instructions numbered 1, 2, 3, 4 and 5. (Instructions are copied in full in foregoing statement.)

It will be seen by comparison of the testimony with the allegations of the petition that the only actionable negligence which the evidence tended to

**Negligent Assurance: Instructions.** support was the *negligent assurance* given by defendant's foreman to plaintiff as to the soundness or safety of the roof, relied upon by plaintiff and given by the foreman knowing that plaintiff would most likely continue to work in said room, and further perhaps in permitting or "setting plaintiff to work" in said room after giving such negligent assurance without correcting the same.

Plaintiff's instruction number 1 undertakes to cover the whole case, at least the whole case so far as the actionable negligence of defendant is concerned. It will be noticed that this instruction does not require the jury to find that the assurance was negli-

gently given. It does not require the jury to find facts which would amount to a negligent assurance. By that instruction the defendant is made an insurer as to the correctness of the facts disclosed by said assurance without regard to whether the assurance was or was not negligently given. Defendant upon assuming the duty of inspecting the roof was not bound to give plaintiff absolutely correct information about the condition of said roof, but only such information as a reasonably careful inspection, under the circumstances, would have revealed. The negligent assurance, as involved by the facts of the case, lies at the very foundation of plaintiff's cause of action, for if the jury should find that there was no negligence in the giving of the assurance then there would have been no negligence in permitting plaintiff to work in said room under the facts disclosed by the evidence in this case, as discussed in the preceding paragraph. In support of the correctness of his instructions, plaintiff cites a line of cases of which the following cases are fair samples: Swearingen v. Mining Company, 212 Mo. 524; Carter v. Baldwin, 107 Mo. App. 217. In fact plaintiff's instruction number 1 so closely resembles instruction number 1 in the case of Carter v. Baldwin, supra, as to indicate that the instruction in the latter case was used as a form or model for the instruction in the case at bar. While the instructions in the Carter case were discussed but slightly, yet, it appears from the facts stated by the court in that case that the question of assurance was in the case to the extent only of relieving plaintiff from the effect of contributory negligence or assumed risks and was not the essence of the actionable negligence as in the case at bar. The same is true as to the question of assurance in the other cases cited by respondent. There is quite a difference between the situation involved in the cases cited by respondent and the case at bar and the distinction is important. In the line of cases relied upon

Hall v. Coal & Coke Co.

by respondent as above stated the matter of assurance was involved and relied upon to the extent only of relieving plaintiff from the effects of contributory negligence or assumed risks, but in the case at bar the primary function of the matter of assurance is to supply the ground or basis of defendant's actionable negligence. It therefore becomes apparent that the authorities relied upon are so different in their fundamental facts as to afford no authority for the correctness of plaintiff's instruction number 1 under the rather peculiar situation involved in the case at bar. It follows that the giving of said instruction constituted error. Neither can we say that the defect in instruction number 1 was cured by the giving of plaintiff's instruction number 3 which undertakes to set forth what facts would constitute a negligent assurance, etc. The terms, "negligent assurance" or that the "assurance was negligently given," are not contained in instruction number 1, and it could not be said that a definition of those terms would make clear the meaning of instruction number 1 which did not contain such terms. Furthermore, even though instruction number 1 had contained those terms, all the facts constituting the actionable negligence should be required to be found by this instruction which attempted to cover the entire ground of actionable negligence. Instruction number 3 was not an attempt to define, as is usually done, such abstract terms as "negligence" or "carelessness" but it was an attempt to supply facts which should have been required to have been found by the main instruction and when incorporated in the separate instruction would serve to confuse rather than to aid the jury.

Instruction number 2 is subject to criticism in that it fails to require the jury to find that plaintiff relied upon the assurance of safety. See instruction covering

Relying upon Assurance.

same proposition in case of Swearingen v. Mining Company, supra, l. c. 537.

There was no error in the giving of instructions 4 and 5. It is true that instruction 5 assumes plain-

**Assuming Facts.**

tiff's suffering, injury and loss of time which would make the instruction vulnerable had there been a contested issue in the trial court as to whether plaintiff in fact did sustain injury and suffer pain and loss of time. But where, as here, the fact of his being injured, etc., is not questioned or disputed the defect in the instruction becomes unimportant.

III. Plaintiff was permitted to prove that the injuries he received resulted in impotency. Defendant

**Pleading: Special Damages: Impotence.**

objected to the introduction of this evidence on the ground the petition failed to allege that impotency resulted from the injuries received. The court overruled the objection and defendant saved an exception. The admission of this evidence is assigned as error. The petition describes the injuries and results in the following language: "His body was severely and permanently wounded, bruised, contused, torn and mangled both internally and externally, and that the bones, flesh and ligaments of his hips, pelvis, legs and ankle were broken, bruised, torn and mangled, and that he suffered great bodily and mental pain and anguish as the result of said injuries aforesaid, and was confined to his bed and room, by reason thereof, for a long period of time, to-wit, the period of about thirteen weeks; that by reason of said injuries he was disabled and prevented from attending to his business affairs and interests or doing anything whatever towards gaining a livelihood from the date of said injury to the present time, and is and was, as a result of said injuries, permanently injured and crippled for life, that ever since said injuries and as a result thereof and by

reason of said injuries he has suffered, does suffer
and will continue to suffer for the remainder of his
life, great bodily pain, annoyance, inconvenience and
expense.''

It will be noticed that the petition fails to spe-
cifically allege impotency, neither does it contain an
allegation of a general nature which might be said to
embrace within its terms the condition of impotency.
It is true that impotency might result from the inju-
ries described, so might paralysis and many other dis-
eases or conditions, but it cannot be said that impo-
tency would *necessarily* result from the injuries de-
tailed or described. If a condition or disease necessa-
rily results or follows an injury there could be no valid
reason for requiring the same to be specifically pleaded,
because it would be presumed that the defendant would
know, or at least be expected to discover before trial,
those results or conditions which are necessarily pro-
duced by the injury alleged. Under such circumstances
defendant would have ample opportunity to inquire
into and to investigate the conditions so resulting and
thereby be enabled to come to the trial of the cause
fully prepared to present to the triers of the facts
such defense as the results of his investigation might
warrant. But where the condition or result is not a
necessary result, how can the defendant be apprised
of such issue unless the plaintiff (who certainly has
full information on the subject) be required to state
such result or condition in his petition? If plaintiff
is not required to so plead, then, in effect, he is given
license to ambush defendant in the trial contest by
springing an issue as to special damages which the
defendant could not have foreseen. And where the
petition is such as in the case at bar, defendant could
not have aided the situation by filing a motion to make
more specific, because the petition contains no general
terms which would by being made more specific un-

cover the hidden secret that impotency resulted from the injuries.

"General damages are those which necessarily and by implication of law .result from the act or default complained of. . . . Special damages as contradistinguished from general damages have been defined as those which are the natural but not the necessary result of the act complained of." [8 Am. & Eng. Ency. Law (2 Ed.), 542-3; Brown v. Railroad, 99 Mo. 310; Nicholson v. Rogers, 129 Mo. 136.]

"Special damages, which are the natural but not necessary result of the injury complained of, must .be specifically alleged. Such injuries do not necessarily result from the defendant's wrongful act, but flow from it as a natural and proximate consequence; hence they must be specially alleged in order that the defendant may have notice thereof and be prepared to meet the same upon the trial." [5 Ency. Pl. and Prac. 719, and numerous cases therein cited; Brown v. Railroad, supra; Nicholson v. Rogers, supra; Bliss on Code Pleading (3 Ed.), par. 297a, 297b; 13 Cyc. 176.]

The rule above announced seems to be in conflict with what is said on that subject in the case of Gurley v. Railroad, 122 Mo. 141, and the majority opinion in the case of Moore v. Transit Company, 226 Mo. 689. The exact point raised in the Gurley case is not disclosed with sufficient clearness to enable us to determine whether it in fact conflicts with the conclusions herein announced; but the Moore case, at least in a part of the discussion of the subject and in the result .reached on the point, is in conflict with the rule which is herein announced. After a careful review of the authorities, we have come to the conclusion that those cases, in so far as they conflict with the conclusion herein reached, should be no longer followed.

Upon a careful consideration of the subject and review of the authorities we have come to the conclusion that the correct rule, the rule which has for its

support the sounder logic and which while it works no unjust hardship upon the pleader yet undoubtedly bespeaks justice and greater fairness for the trial conflict, is stated by GRAVES, J., in his dissenting opinion in the case of Moore v. Transit Co., supra, l. c. 710, as follows:

"It is a well known fact that from certain kinds of physical injuries, certain results will thereafter inevitably follow. In other words, that such injuries will naturally produce certain conditions and diseases. In such case an allegation in the petition of the injury inflicted would justify proof of such conditions and diseases as would of necessity follow the injury and as to such conditions and diseases the defendant must come prepared to defend. But, on the other hand, there are other physical injuries which may or may not produce resulting conditions or diseases. For instance, an injury to the lung might superinduce pneumonia, but not necessarily so. An injury to the nervous system might produce blindness, but not necessarily so. These conditions or diseases last mentioned may as readily come from other causes as from the physical injury or injuries. In such case the petition should be specific, to the end that the defendant could come prepared to meet the issues and show that the condition or disease was not caused by the physical injury. This he cannot do if the unpleaded conditions or diseases are sprung upon him for the first time at the trial."

It therefore follows that the allegations of the petition were not sufficient to justify the admission of proof of impotency and the court erred in admitting such evidence over defendant's objection and exception. [Campbell v. Cook, 86 Tex. 630; Jones v. Railroad, 71 N. Y. Supp. 647; Missouri, Kansas & Texas Ry. Co. v. Cook, 8 Tex. Civ. App. 376; Page v. President, etc., of D. & H. C. Co., 76 App. Div. (N. Y.) 160.]

By reason of the result reached, it becomes un-necessary to discuss the question raised by appellant as to the excessiveness of the verdict.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—By reason of the fact that para-graph III of the foregoing opinion conflicted with the majority opinion of the Court in Banc in the case of Moore v. Transit Company, *supra,* this cause was transferred to Court in Banc for final determination, and in Banc the opinion of WILLIAMS, C., was adopted, *Lamm, C. J., and Woodson, J.,* dissenting.