W. D. HULL v. EAST LINE AND RED RIVER R. R. CO.

(Case No. 1933.)

1. RAILWAY COMPANIES—RIGHTS OF PASSENGERS—CONTRACT—AGENTS—A passenger on a railway train has no right to demand that he be put off at a point where there is no regular station, unles he has contracted for that privilege with some agent of the company having the real or apparent power to make such a contract.

2. SAME—AUTHORITY—The frequent exercise of power by an agent, which from its nature must have been known to the principal, may be regarded by persons dealing with the agent as sufficient evidence of the real existence of the power which the agent assumes to exercise. See opinion. (Authorities cited.)

APPEAL from Morris. Tried below before the Hon. W. P. McLean. The opinion states the necessary facts.

*H. E. Henderson* and *Moore & Hart*, for appellant, cited: Railway Company v. Terry, 62 Tex., 380; Railway Company v. Casey, 52 Tex., 112; Beauchamp v. Railway Company, 56 Tex., 239; Kohn v. Washer, 64 Tex., 131; Merriman v. Fulton, 29 Tex., 98; Chambers v. Hodges, 23 Tex., 104; Echols v. Dodd, 20 Tex., 190; Railway Company v. Donahoe, 56 Tex., 162; Porter v. The New England, 17 Mo., 290.

*John B. Eddins*, for appellee.

STAYTON, ASSOCIATE JUSTICE.—The case made by the appellant is, that he entered the passenger car of the appellee, at Daingerfield, to go to "Veal's switch," a point, though not a regular station, at which the railway company frequently received and put off passengers; of which he had knowledge at the time he entered the car. He purchased no ticket before entering the car but, as a witness, stated that

after entering the car, he informed the conductor where he desired to stop and paid him the fare claimed for transporting him to that place. He further shows that the conductor, upon reaching "Veal's switch," the place to which he had paid, refused to stop and put him off, but carried him to the next regular passenger station on the road.

For this violation of contract he seeks to recover damages, in his petition setting up facts tending to show the extent of the injury. There is no material discrepancy in the evidence offered by the respective parties, except that the conductor denied receiving fare to "Veal's switch," or the existence of any agreement to put the appellant off at that place. The charge given without request, was calculated to induce the jury to believe that the right of the appellant to be put off at "Veal's switch" depended upon whether that had been established by the railway company as a regular station at which it would receive and put off passengers, and fails to recognize the right of the appellant to be put off there, if the conductor, by receiving fare to that place, had thereby contracted so to put him off.

The appellant asked a charge, to the effect that if the conductor, acting in the course of his employment, contracted with the appellant to carry him to "Veal's switch," that a failure to give him an opportunity to get off at that place would be a violation of the contract. This charge was refused. That railway companies have the right to establish stations at which they will receive and discharge passengers and freight, is doubtless true; and when so established, a failure to give to passengers an opportunity to board or leave their trains at such places would give cause of action to any person suffering injury thereby.

If a person, however, should enter a train to go to some point at which there was no regular station, it would not be his right to be put off there, in the absence of a contract so to put him off, made with some agent of the railway company having the real or apparent power to make it. In the case before us, the appellant bases his right to recover upon a contract which he claims to have made with the conductor.

To make the contract of the conductor binding on his principal, he must have had power, or the apparent power, to make it. If it be true, as the great weight of the evidence tends to show, that the trains of the appellee frequently stopped at "Veal's switch," and there received and discharged passengers, it is unimportant that conductors may have had no authority from the company so to do. What they frequently did, in the course of the employment—in the conduct of the business of the principal—in so far as the traveling public are concerned, must be deemed to have been done in the exercise of power

conferred by the principal, though, in fact, the principal may have forbidden the act.

In such matters, the frequent exercise of power, which, from its nature, must have been known to the principal, may be regarded by persons dealing with the agent as sufficient evidence of the real existence of the power which the agent assumes to exercise.

The rule is thus stated by a late elementary writer: "Where carriers transact their business through agents, either general or local, it is equally competent for such agents to bind them by such contracts as the public have a right to suppose they are authorized to make, from the manner in which they are employed, or are seemingly intrusted by their principals; and as most of the carrying business is now done by corporations, which can act only through the instrumentality of agents, it is necessary for the protection of those who have goods to send by them, that this should be so." Hutchinson on Carriers, 267, 268, 269.

The correctness of this rule has been recognized by this court many times, Kohn v. Washer, 64 Tex., 132; Merriman v. Fulton, 29 Tex., 98; and has the support of the elementary writers. Story on Agency, 127, 443; Lawson on Carriers, 229, 230.

The court below should have given a charge containing the substance of the charge asked, and for its failure to do so its judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 5, 1886.]