## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
### v. R. L. COOK.
#### No. 926.

1. **Waiver of Condition by Railway.**—The railway company could waive the provision in a contract for shipping a horse, requiring the owner in charge of the horse to ride in the caboose, and providing if he rode elsewhere he should assume risk of injury, after the contract was executed. The waiver would be valid whether in writing or by parol, and to make it valid needed no additional consideration. Such waiver could be made by an agent having the legal or apparent power to act.

2. **Acts of Conductor—Res Gestæ.**—The declarations of the conductor on taking up the ticket held by the shipper, that "it authorized the passenger to ride in the car with his horse," were competent. The act of the conductor allowing the passenger to occupy the stock car was res gestæ.

3. **Custom of Conductors.**—It was competent to prove that it was the custom of conductors to allow shippers of fine stock to ride in the car with them, for the purpose of showing that the conductor had power to waive the stipulation requiring plaintiff to ride in the caboose.

4. **Value—Time and Place.**—The court submitted as basis for a verdict the value of the horse at the point of destination. In absence of request, it was not error to omit the time of such valuation.

5. **Charge—Practice.**—There being evidence tending to prove that the conductor had authorized the plaintiff to ride in the car with his horse, and that the conductor had power to do so, it was not error in the court to refuse an instruction withdrawing the issues from the jury.

6. **Burden of Proof—Waiver.**—The shipping contract required the owner to occupy the caboose—he claimed to have had authority from the conductor to ride in the stock car with his horse. This waiver it devolved upon the plaintiff to prove, in suing for personal injuries suffered while in the stock car.

7. **Charge—Negligence.**—Plaintiff was a passenger upon the front section of a freight train which was running about five minutes ahead of the second section. From defective machinery the first section stopped. The second section collided, and plaintiff was injured. In such case, it was error to charge the jury to find for the plaintiff, if the conductor "became aware of the danger of the train being run into by another train, or, as a man of ordinary prudence, should have become aware of such a danger, and you believe the safety of plaintiff in said train was imperiled thereby, and that the conductor knew, or as a reasonably careful man ought to have known, of such peril, and that there was sufficient time after said conductor became aware of such peril, or ought to have become aware thereof, for him to have warned plaintiff, and for plaintiff to have escaped had he been warned."

8. **Pleading—Special Damages.**—General allegations, that plaintiff "was wounded and bruised, was greatly shocked, and injured in his head, chest, lungs, back, spine, and limbs, and had his nervous system seriously impaired, and thereby sustained serious external and internal injuries," will not support evidence of injury of special nature, e. g., impaired capacity for sexual intercourse.

APPEAL from Williamson. Tried below before Hon. F. G. MORRIS.

*Fisher & Townes,* for appellant.—1. The court erred in permitting plaintiff to testify as to what transpired between him and the alleged agent at Dallas, and as to what was said touching or concerning his rights under the contract and the ticket which it is claimed he possessed. Abram v. Railway, 83 Texas, 65; Ryan v. Railway, 65 Texas, 19; Railway v. Gilbert, 64 Texas, 541; Bank v. Ins. Co., 62 Texas, 463; Harrell v. Zimpelman, 66 Texas, 294; 81 Texas, 147; Moore v. Railway, 49 Texas, 31; Clemmons v. Railway, 55 Texas, 88; Hull v. Railway, 66 Texas, 620; Prince v. Railway, 64 Texas, 145; Dawkins v. Railway, 77 Texas, 288; Railway v. Jones, 95 U. S., 439; Hickey v. Railway, 14 Allen, 429; Miles v. Railway, 13 Am. and Eng. Ry. Cases, 11; Player v. Railway, 12 Am. and Eng. Ry. Cases, 114; Railway v. Boyd, 24 S. W. Rep., 1086, 1089.

2. The court erred in permitting the plaintiff and other witnesses to testify as to an alleged custom or practice prevailing among the agents of the defendant, prior to the accident complained of, under which an owner or shipper of a race animal was allowed to ride in the car with the horse.

3. The court erred in permitting the plaintiff to testify as to any impairment of his genital or urinary organs, because the damages sought to be recovered are in the nature of special damages which have not been alleged. Railway v. Curry, 64 Texas, 87; Glasscock v. Shell, 57 Texas, 223, 224; Moehring v. Hall, 66 Texas, 240; Suth. on Dam., 426, 428; 5 Am. and Eng. Encyc. of Law, 50; Railway v. Adams, 24 S. W. Rep., 839.

4. The court erred in directing the jury to find for plaintiff if certain facts enumerated were found by them, without requiring that the jury should first determine whether the same constituted negligence producing or causing the injury complained of, thereby in effect instructing that such facts, as matter of law, constituted negligence.

The court, throughout its charge, erred in instructing the jury to find for the plaintiff if they should find that the conductor did or omitted to do certain enumerated things, thus in effect charging that the doing or the failing to do such things was negligence in law, instead of leaving the question of negligence or not to the decision of the jury. Railway v. Hill, 71 Texas, 451; Railway v. Murphy, 46 Texas, 356; Railway v. Gasscamp, 69 Texas, 547; Brown v. Sullivan, 71 Texas, 475; Calhoun v. Railway, 84 Texas, 229; Railway v. Anderson, 76 Texas, 249; Railway v. Dyer, 76 Texas, 160; Railway v. Porfert, 72 Texas, 351; 70 Texas, 553; 60 Texas, 103; 75 Texas, 271.

5. The verdict of the jury is contrary to and against both the law and the evidence; because (1) the proof overwhelmingly shows that the plaintiff and his horse were only entitled to be in the train that was wrecked, under and pursuant to the terms of the contract relied upon, and that it required him to ride in the caboose or take upon himself the risk of personal injury; and further, that had he been in the caboose he would not have been hurt; (2) there was no evidence

proving or tending to prove that any one authorized so to do waived or attempted to waive the provision of the contract relied upon; and (3) the evidence does not, if true, prove a waiver. Prince v. Railway, 64 Texas, 145; Railway v. Moore, 49 Texas, 31; Hull v. Railway, 66 Texas, 620; Railway v. Langdon, 92 Pa. St., 21; Eaton v. Railway, 57 N. Y., 382; Railway v. Hirst, 18 L. A. R., 631; Railway v. Boyd, 24 S. W. Rep., 1086, 1089; 149 Mass., 204; 43 Am. Dec., 365, 366; 12 Am. Rep., 475.

*J. W. Parker*, for appellee.—1. The facts show that the conversation between appellee and the agent at Dallas, regarding appellee's right to ride in the car with his horse on the ticket which he held, took place after the contract was signed and delivered, and was a completed transaction; and what was said had no reference to that contract, but related to appellee's right to ride in the car with his horse on the ticket simply as a quid pro quo. Hull v. Railway, 66 Texas, 620, 621; Railway v. Dickson, 32 N. E. Rep., 380–382; Ins. Co. v. Munger, 30 Pac. Rep., 121, 122; Ins. Co. v. Norton, 96 U. S., 234.

2. The evidence of impairment of appellee's genito-urinary organs was admissible under the particular allegations of injuries made in the petition. Railway v. McMannewitz, 70 Texas, 78; Campbell v. Coak, 24 S. W. Rep., 979; So Relle v. Tel. Co., 55 Texas, 311.

3. The charge of the court and special instructions given at the request of appellants must be taken as a whole and be construed together in the light of the issues made by the pleadings and evidence, in order to determine whether the charge in the given particular was erroneous or misleading. So taken, the instructions present no error. Railway v. Smith, 65 Texas, 170, 171; Railway v. Nix, 23 S. W. Rep., 329, 330; Rost v. Railway, 76 Texas, 172; Freiberg v. Johnson, 71 Texas, 564.

4. The facts were undisputed, and showed beyond any reasonable doubt that the collision was the result of negligence on the part of defendants, and no other verdict upon plaintiff's right to recover could have been justly or legally rendered, and in such case the alleged error in the court's charges becomes immaterial, as do any others there may be therein. Railway v. Wallace, 74 Texas, 585; Railway v. Converse, 139 U. S., 469, and cases cited; 2 Thomp. on Trials, secs. 2401, 2403; Shearm. & Redf. on Neg., 3 ed., sec. 11; Railway v. Sullivan, 10 U. S. App., 480–482; Railway v. Delahunty, 53 Texas, 209, 210, 212.

COLLARD, ASSOCIATE JUSTICE.—This is an action for damages brought by the appellee, R. L. Cook, against the Missouri, Kansas & Texas Railway Company, and the Missouri, Kansas & Texas Railway Company, of Texas, for the value of a horse killed and personal injuries sustained by plaintiff in a collision between two sections of a freight

train, caused by the negligence of defendant the Missouri, Kansas & Texas Railway Company.

Plaintiff owned a race horse, and defendant the Missouri, Kansas & Texas Railway Company received the horse from him at Dallas, Texas, under a written contract with him to ship the same to Taylor, Texas. The contract contained a stipulation that the owner was to load and unload, feed, water, and attend to the animal, at his own expense and risk, while in the car and yards of the company. To do this, the owner or person in charge was to ride on the train carrying his horse, the contract providing as follows: "For the consideration aforesaid the second party [plaintiff] further agrees, that the said person in charge of said stock under this contract shall remain in the caboose car attached to the train while the same is in motion, and that whenever such person or persons shall leave the caboose car, or pass over or along the cars or track, they shall do so at their own risk of personal injury from any cause whatever," etc.

By permission of the conductor, and according to a custom on the road, plaintiff rode in the car in which his horse was shipped, which was the second car in front of the caboose on section one of the train. Section two followed section one, and the two sections were to run within five minutes of each other, or about two miles apart. The train was so running between Alvarado and Taylor, when, about 2 a. m. on November 4, 1891, the air brakes on section one got out of order, commenced setting, causing the train to slow up and stop. The conductor immediately dispatched a brakeman to signal the other section of the train coming on behind. The conductor waked up a deadhead brakeman in the caboose, got off, and went forward towards the "air cars," which extended back six or seven cars from the engine. He got to about the third air car, "bled" two to see if the air brakes could be released, and while bleeding a car he heard the engineer say: "There they come, and they are going to hit us;" and in a quarter of a minute the collision occurred. Section one was composed of nineteen cars besides the engine and tender. A man in the caboose got off after the collision, unhurt. No one in the caboose was hurt, but it was knocked off both trucks. In the next car in front were a negro boy and four tramps, none of whom were hurt, but the car and the one next in front, in which plaintiff was riding, "were torn all to pieces." Plaintiff's horse was killed and he was severely injured, and three men and a boy who were in the car with him were killed. The brakeman sent back by the conductor to signal section two ran back for the purpose, but only got back the distance of ten telegraph poles; he fell down an embankment and through a bridge on the way. Probably five or six minutes elapsed from the time the air brakes began to stop the train before the collision.

Defendant set up the clause in the contract above quoted requiring plaintiff to ride in the caboose, and that he would assume risk of personal injury of any kind if he should leave the caboose, claiming that

he willfully violated this provision of the contract, and placed himself in the car with his horse without authority of the company; that he was a trespasser, and so was guilty of contributory negligence, without which he would not have been hurt.

Plaintiff replied, that defendant had waived the provision of the contract relied on to prevent a recovery; that the agent of defendant who had executed the contract, having authority to so act, authorized plaintiff to ride in the car with his horse; and that it was the custom of conductors of defendant to waive the provision, well known to defendant; that the conductor, being duly authorized, permitted plaintiff to ride in the car, and that the provision was waived; that the provision was not violated, as the car was not in motion at the time of the injury; and further, that after the train stopped he was in great peril from a collision by the other section, which was well known to the conductor, and of which plaintiff was ignorant; that the conductor had ample time in which to warn him, and that had he done so plaintiff would not have been injured, but that the conductor negligently failed to warn him, and so caused the injury.

The trial resulted in a verdict for plaintiff for $500, value of the horse, and $15,000 for personal injuries and expenses of plaintiff. Defendants appealed.

*Opinion.*—1. At the time the contract was executed plaintiff had in his possession a first-class passenger ticket of defendant from Dallas to Taylor, purchased some time before. The contract was signed in duplicate, and plaintiff had folded his copy and put it in his pocket. He then produced his passenger ticket, showed it to the agent who executed the contract for the company, and asked him if it entitled him to ride in the car with his horse, and the agent told him that "it did."

This testimony was admitted by the court over objections of defendant, and is the subject of assignment of error, upon the ground, as stated in the bill of exceptions, that it was an attempt to alter the express written agreement; that no authority of the station agent was shown to waive the provision of the contract requiring plaintiff to ride in the caboose; that the statement of the agent did not prove a waiver, but was only his construction of the contract, and that the waiver was without consideration.

We are not prepared to say that the statement of the agent was a contemporaneous parol agreement with the written contract, intended to vary or contradict it, and therefore inadmissible under the rule. The facts seem to indicate that it was made after the written agreement was executed, and related to subsequent matters and information subsequently furnished the agent. We think plaintiff could have relied upon the statement of the agent as a waiver of the contract stipulation, and that the latter had authority to waive. The company could have waived the provision after the contract was executed, and such waiver would be valid, whether in writing or by parol, and to make it

valid it needed no additional consideration. Ins. Co. v. Norton, 96 U. S., 240; Hutch. on Carr., 267–269; Hull v. Railway, 66 Texas, 620. What the company could do in this respect it could do by its agents. Generally, in the conduct of its business, a railway company must act by its agents. They are placed in the various offices of the company to represent it—to transact its business—and are held out by the company as its legally authorized agents; and persons dealing with them may presume that they are authorized to exercise powers necessary to be exercised at such places in the conduct and direction of the company's affairs. In this case, the agent had just executed the contract of shipment with plaintiff, a power which it is not denied he possessed. No one else was present or would be expected to be on the ground to inform plaintiff of his rights. The agent had the apparent authority to act, upon which the plaintiff might legally act. We think the testimony was admissible.

2. We think, for much more cogent reasons, that the conversations of plaintiff with the conductor of the train, informing him that he could ride in the car with his horse, and the acts of the conductor taking up his ticket while in the car, were admissible. These were the facts of the case, the events showing that he was in the stock car and the authority by which he was there, the acts of the conductor in placing him in the car, and were res gestæ. Whether the conductor had power to permit him to ride in the car is another question.

3. In order to show that the conductor had such power, plaintiff offered testimony of several witnesses, to the effect that it was a custom of conductors of the company to allow shippers of race animals and fine stock to ride in the car with them.

The testimony was admitted by the court over the objection of the defendant. The testimony was not let in to allow a custom to supersede and annul the contract, but to show that the conductor had authority to do as he did—to waive the stipulation in the contract requiring plaintiff to ride in the caboose. For this purpose the testimony was clearly admissible. The principle has been frequently recognized by the Supreme Court of this State.

In Hull v. Railway, 66 Texas, 620, the court said: "To make a contract of a conductor binding on his principal, he must have had power, or the apparent power, to make it. If it be true, as the great weight of the evidence tends to show, that the trains of the appellee frequently stopped at 'Veal's Switch,' and there received and discharged passengers, it is unimportant that the conductors may have had no authority from the company so to do. What they frequently did in the course of their employment—in the conduct of the business of the principal—must be deemed to have been done in the exercise of power conferred by the principal, though in fact the principal may have forbidden the act. In such matters, the frequent exercise of power, which, from its nature, must have been known to the principal, may be regarded by persons dealing with the agent as sufficient evidence

of the real existence of the power which the agent assumes to exercise." The court rendering the foregoing decision cites, in support of the correctness of the rule, Kohn v. Washer, 64 Texas, 132; Merriman v. Fulton, 29 Texas, 98; Laws. on Carr., 229, 230; Story on Agency, 127, 443, and authorities in point. See also Ins. Co. v. Norton, supra; Phœnix Express v. Munger, 30 Pac. Rep. (Kan.), 120; Railway v. Dickson, 32 N. E. Rep., 380.

The case of Railway v. Dickson, 32 Northeastern Reporter, 380, is a case similar to the one before us. The contract prohibited the owner from riding in the car with his two stallions. In an action for damages by the owner for personal injuries received by him while in the car with his horses, it was held proper to admit evidence that it was the custom of the company to allow shippers of stock to ride in the car with them, in order to show a waiver of the prohibition.

There was no error in admitting the testimony of custom for the purpose stated. The court in the charge properly limited the effect of the testimony of custom to the question of the authority of the agent to waive the provision of the contract stated. The testimony being properly admitted, it was not error to refuse to strike it out.

4. The court instructed the jury, that in case they should find for plaintiff for the killing of his horse, the measure of damage sustained would be the market value of the horse at Temple, Texas, and omitted to state that such value should be estimated as at the time when he was killed. The market value at Temple, Texas, at the time of the loss was the measure of damages, but the omission to state the time is not reversible error. The testimony as to value related to the time when the horse was killed, and the jury must have so understood the charge. If defendants were not satisfied with the charge, they should have asked the court to correct it. This question will doubtless be obviated on another trial. The charge of the court was, with some exceptions hereafter noticed, correct.

5. From what we have said as to the admissibility of testimony, it will be seen that, in our opinion, it was not error for the court to refuse instructions to the jury asked by defendant to the effect that plaintiff had no right to ride in the car with his horse, and that the agent and conductors had no power to permit him to do so. It was a question for the jury under the testimony to find whether the conductors had such power, and whether there had been a waiver of the contract prohibition to ride in the car with the horse. There was legal evidence tending to show that the conductors had authority to waive the contract, and that it had been waived in the particular set up as a defense.

6. The eighth paragraph of the court's charge reads: "If you believe from the evidence that the stipulation in the contract in question as to riding elsewhere than in the caboose car was waived by any duly authorized agent of the said Missouri, Kansas & Texas Railway Company after said contract was made, and that plaintiff was permitted by the conductor in charge of said train to ride in said stock car; or

if you believe that notwithstanding said contract, or any violation of it that plaintiff may have been guilty of, while it remained in force, the injury to plaintiff might have been averted by warning being given him by the conductor after the conductor became aware or should have known of the approach of the train which collided with the train in which plaintiff was a passenger, you will find for the plaintiff."

Appellant criticises this charge, upon the ground that the court assumes that at some time between the execution of the contract and the collision the contract was not in force. Appellant claims that the charge can be so construed from the expression, "or if you believe that notwithstanding said contract or any violation of it that plaintiff may have been guilty of, *while it remained in force.*"

The expression italicized may bear the construction placed upon it by defendant when critically examined. As the case is to be reversed upon other grounds, we do not deem it necessary to decide whether this slight oversight in the charge would necessitate a reversal of the case. The learned trial judge will doubtless guard against the omission on another trial.

7. The burden of proof was upon the plaintiff to show the alleged waiver, and it was not strictly correct to charge, that "if the jury believe from the evidence that said provision of the contract as to riding elsewhere than in the caboose was not waived by any agent of the said Missouri, Kansas & Texas Railway Company having authority to waive the same, and that riding in said stock car contributed to the injury of plaintiff, then plaintiff can not recover, unless," etc.

The objection to this charge insisted on by appellant is, that it imposes the burden of proof upon defendant to show that there was not a waiver of the clause of the contract set up by defendant as a defense; when the burden of proof was upon plaintiff to show that it was waived.

We are not prepared to say that the objection is sound, when taken in connection with other portions of this charge; but suggest to the court below on another trial to so frame the charge upon this subject that it may not be subject to this objection, so as to impose the burden of proof unquestionably upon the plaintiff. If the jury fail to find from a preponderance of the evidence that there was a waiver. the plaintiff can not recover, if his riding in a car other than the caboose proximately contributed to his injury, unless there are other grounds upon which he would be entitled to recover, notwithstanding the alleged waiver was not proved.

8. The entire charge in this connection should be stated to understand another more serious objection made to it by appellant: "If the jury believe from the evidence that said provision of the contract as to riding elsewhere than in the caboose car was not waived by any agent of the said Missouri, Kansas & Texas Railway Company having authority to waive the same; that riding in said stock car contributed to the injury of the plaintiff, then the plaintiff can not recover, unless

you further find that the agent—the conductor—in charge of said train of said Missouri, Kansas & Texas Railway Company on which plaintiff was being carried, became aware of a danger of the same being run into by another train, or, as a man of ordinary prudence, should have become aware of such danger, and you believe the safety of plaintiff in said train was imperiled thereby, and that the said conductor knew, or as a reasonably careful man ought to have known, of such peril, and that there was sufficient time after said conductor became aware of such peril, or ought to have become aware thereof, for him to have warned plaintiff, and for plaintiff to have escaped had he been warned, then, notwithstanding said contract, you will find for the plaintiff."

The eighth section of the charge (which has heretofore been set out in this opinion) is much to the same effect. It will be seen at once that these charges are erroneous. They authorize a recovery by plaintiff if the jury find certain facts of knowledge on the part of the conductor of plaintiff's peril, if any, whether he failed to warn the plaintiff or not, and whether such failure was negligent or not, and whether or not it proximately caused the alleged injury. The fact that plaintiff may have been in danger, and that the conductor knew it or ought to have known it as a man of ordinary prudence, would not alone create a liability upon the part of the company for the damages sued for.

The assignments of error addressed to these defects in the court's charge, we are constrained to say, must be sustained. With certain obvious additions it would have been an admissible charge upon the case as alleged and the facts in evidence, but it did not go far enough in presenting the issues to the jury. The negligent failure to warn plaintiff, and the results of it if true, and if they were the consequences of defendant's negligence, constituted a cause of action independent of other matters and independent of the contract, and this entire phase of the case upon which liability rested should have been fully presented to the jury. This error in the charge requires a reversal of the judgment.

There is another ground insisted on by appellant which requires a reversal of the judgment.

9. On the trial the court, over objections of defendant, permitted plaintiff to testify, that his genital and urinary organs were impaired. The objection urged in the court below and here insisted on is, that the testimony was inadmissible under the allegations of the petition, which were general in their character. The allegations of injury are: "And the plaintiff was wounded, skinned, and bruised; was greatly shocked and injured in his head, chest, lungs, back, spine, and limbs, and had his nervous system seriously impaired, and thereby sustained serious external and internal injuries."

These allegations are general, and, as has often been decided in this State, will admit proof of such injuries as are the natural and necessary result of wrong complained of; as upon an allegation that plaintiff was cut, bruised, and wounded internally and externally about his

hip and spine, evidence of physical pain and mental suffering was held to be admissible. Railway v. Curry, 64 Texas, 85. But the damages of a special character to be proved must be alleged. Glasscock v. Shell, 57 Texas, 223, 224; Moehring v. Hall, 66 Texas, 240. It seems that this is the rule even when there is no special exception to the insufficiency of the averment, though when there is a special exception the rule becomes more imperative.

In a recent case finally decided by our Supreme Court, the injuries were alleged as follows: "Breaking and crushing the bones of his hip and thigh, tearing, cutting, and lacerating his flesh, bruising, wounding, and injuring him in his back, bowels, hips, legs, and in other parts and members of his body." It was further alleged, that he "had suffered and would continue to suffer great mental anguish and physical pain, that his injuries were permanent, destroyed the use of one leg, and that his capacity to earn money is almost entirely destroyed." There was no special exception, that the injuries were not definitely described. Evidence was admitted that plaintiff's "capacity to have sexual intercourse was greatly impaired," and on appeal to the Court of Civil Appeals the judgment of the lower court was affirmed, but on writ of error to the Supreme Court, it was decided that the testimony was inadmissible under the allegations, the court holding the rule as stated above, and that the particular effects of the injury following must be set up. Receiver v. Cook, 86 Texas, 632. See also Railway v. Adams, 24 S. W. Rep., 839.

The same rule applied in the case of Receiver v. Cook would exclude the testimony objected to in this case. If we were to hold otherwise we would conflict with the law of that case, which the Supreme Court regards as settled in this State. The testimony was inadmissible, and it was reversible error to permit it to go to the jury.

Because of the reversible errors herein pointed out, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 31, 1894.