### THOMAS v. BAPTIST FOUNDATION OF TEXAS.
#### No. 13841.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 16, 1938.

Rehearing Denied Jan. 13, 1939.

W. E. Fitzgerald, of Wichita Falls, for appellant.

Worsham, Burford, Ryburn & Hincks, of Dallas, and John Davenport and Edgar M. Mann, both of Wichita Falls, for appellee.

SPEER, Justice.

Baptist Foundation of Texas, a corporation, sued John W. Thomas in the District Court of Wichita County, for a balance of $2,413.39, alleged to be due on a certain note and indemnity contract in the principal sum of $4,000.

The facts and legal questions involved are very complicated. The pleadings are necessarily lengthy, since it was necessary to disclose numerous transactions which entered into the immediate question before the court. A general summary, however, we think will be adequate for the purpose of this appeal.

Sometime prior to April, 1931, the Security National Bank of Wichita Falls was financially embarrassed, and, to prevent the necessity of an immediate closing of the bank, J. G. Hardin advanced. to that institution for immediate use, $250,000, and a group of interested citizens signed a note to Hardin for the amount advanced, each of said signers limiting his respective liability thereon for named amounts. Defendant, John W. Thomas, was one of those signers and his liability thereon was limited to $4,000. The obligation was in the form of a guaranty to Hardin against loss sustained by him in making the advancement to the bank. In the event of

liquidation by the bank, Hardin was to take over its assets and liquidate them, applying the proceeds on the obligation and whatever amount, if any, remaining unpaid thereafter, the guarantors were to be responsible for, in proportion to the limitation placed upon their respective guaranties, set out in the original agreement. The guaranty contract was placed in escrow with the City National Bank of Wichita Falls. Thereafter, J. G. Hardin, well known as a philanthropist, gave the note and guaranty contract to Baylor-Belton College, to be added to its endowment fund. That college, in turn, passed the obligation to the plaintiff, Baptist Foundation of Texas, a corporation, organized without capital stock, to handle such funds for the Baptist General Convention of Texas, in trust for the benefit of certain Baptist institutions, including Baylor-Belton College. Out of respect for the donor, the name of that college was subsequently changed to Mary Hardin Belton College.

At the date of the execution of the limited guaranty obligation to J. G. Hardin, for the $250,000 above mentioned, the same guarantors of that obligation executed a second joint and several obligation to Hardin for interest to accrue on the principal contract.

Prior to the failure of the Security National Bank of Wichita Falls, defendant, John W. Thomas, had executed to the bank his obligation for $34,000, which, with accrued interest at the time of the subsequent failure of the bank, amounted to $36,000. At the time the bank closed its doors, that obligation was among its assets.

The bank failed, and on about January 1, 1934, J. W. Nash, of Waco, Texas, was selected by the Trustees of Baylor University to take charge of the liquidation; that institution being also a donee of a $200,000 annuity fund from J. G. Hardin, created after Hardin had acquired the claims of all other creditors of the bank, who, by another contract, were entitled to certain assets of the defunct bank. During the next ensuing two years, Nash realized enough from the assets to liquidate the claim of Baylor University, and to reduce the Mary Hardin Belton College debt to $63,000. In the reduction of the latter claim, some of those who had signed the guaranty obligation had paid and collateral of others was applied. In the remaining assets of the liquidation was the $36,000 note of defendant, John W. Thomas.

Nash, with two other representatives of the Baptist Foundation, went to Wichita Falls and advertised and sold the remaining assets to the highest bidder. The assets were sold one by one and bought in by plaintiff, Baptist Foundation of Texas, for $26,000. This amount was credited on the remaining $63,000 unpaid on the Mary Hardin Belton College obligation, thereby reducing the indebtedness to $37,000. This being done, the guarantors, including defendant, Thomas, requested an extension of time for about a year to January 1, 1937, which extension was granted by plaintiff.

Obviously, it will be more convenient for us to refer to Baptist Foundation of Texas, as plaintiff, and various other parties involved by their respective names.

As stated, plaintiff instituted this suit against John W. Thomas, for the amount previously mentioned, it being the proportion his original limited liability bears to the whole amount unpaid. No question is raised as to the amount claimed, if plaintiff is entitled to recover.

Plaintiff's petition sets out the execution of the $250,000 note and obligation signed by a number of persons, including John W. Thomas, and the co-existing escrow agreement by which the liability thereon of the said Thomas was not to exceed $4,000. Allegations are made of credits theretofore made on the note, eventually reducing the principal amount to $37,010.37; that said credits were made from sale of assets of the liquidating bank, together with amounts paid by other guarantors, and that the sum sued for was the pro rata amount for which Thomas was responsible. Allegations are also made that upon the request of Thomas and other co-guarantors, maturity of the principal obligation had been extended to January 24, 1937. Suit was instituted May 8, 1937.

Defendant, John W. Thomas, answered with general and special exceptions, all of which were overruled, and not here complained of; by general denial and by special defense to the effect that payment had been made of the obligation sued on; the manner of payment being, that while defendant did not deny the execution of the obligation set out in plaintiff's petition, that it was settled, receipted for and released by plaintiff. That prior to July 21, 1936, defendant had become insolvent and made that fact known to plaintiff; that he could arrange with his mother-in-law, Mrs. Sue Stringer, to advance as much as 10 cents

on the dollar to his creditors in return for an assignment to her of all indebtedness owed by him. That with full knowledge by plaintiff of the facts so alleged, defendant offered to pay by the means stated the sum of $3,600 to plaintiff, in full settlement of obligations of every kind and character owed by him to plaintiff, with the exception of one certain obligation made by him to plaintiff to pay interest on the amount unpaid on the original obligation. That plaintiff accepted the proposition, settlement was made on that basis, and that Mrs. Sue Stringer made payment to plaintiff on July 21, 1936, taking an assignment thereof from plaintiff, which assignment contained a complete release of Thomas from all said liabilities, including the one sued on, except the interest obligation contracted to be excepted.

Plaintiff replied to Thomas' answer by supplemental petition, in which general denial was interposed, and it was specially alleged: (1) that it had never executed to Thomas a valid release of the indebtedness sued on; (2) that such release as claimed by Thomas was one executed by Hugh E. Moore, and that if it contained a release from the obligation sued on, the same was done by the said Moore without authority, express or implied, further alleging that Moore was an employee of plaintiff, with limited authority, and sets out the only power conferred by it on Moore; (3) that neither the plaintiff, nor anyone authorized by it to do so, had ever ratified or confirmed the acts of Moore, if he had executed such a release as that claimed by Thomas; (4) that the said Hugh E. Moore had previously been trying to collect certain notes taken over by plaintiff from the liquidation of the failed bank, among which assets was a note for $36,000 owing by Thomas, and that said Moore went to Wichita Falls with instructions from plaintiff to accept $4,000, in payment of that note.. That Thomas offered to pay $3,600 for it and Moore procured specific authority from plaintiff to accept it. That Moore and Thomas went to an attorney's office to close the deal, and Thomas then, for the first time, asked for a release for all indebtedness, and Moore informed him he could not give him a release from the Hardin guaranty, the one upon which this suit is based. That these things were said in the presence of Leslie Humphrey, the attorney who represented Thomas and Mrs. Stringer. That the said attorney then wrote up an assignment of the $36,000 note to Mrs. Stringer, and in said instrument released Thomas from all other indebtedness owing by him to plaintiff, except interest on the principal indebtedness. That Moore, having the utmost confidence in the ability and integrity of the attorney to write the instrument as agreed upon, did not read it carefully and detect the mistake; that it was not written as agreed upon, but was written under a mutual mistake of the parties. Allegations are also made that as a matter of fact, all interest on the original obligation had, at that time, been paid, and there was no such outstanding obligation to be excepted as was done by the instrument, and that in Humphrey's effort to except the guaranty contract herein sued on, he erroneously excepted the interest contract which had been paid. Plaintiff, in that supplemental petition, interpleaded Mrs. Sue Stringer as a party defendant, to the end that any interest she may have in the suit at bar, may be adjudicated. Plaintiff prayed that the instrument relied upon by Thomas be reformed to speak the real intentions of the parties, and in the alternative, plead that if the instrument be not so reformed, it tendered to Mrs. Stringer the return of the $3,600 paid by her if she would reconvey the note assigned to her by plaintiff.

Defendants, Thomas and Mrs. Stringer, filed a supplemental answer by which they plead Hugh E. Moore was the liquidating agent selected by plaintiff, to make settlement with Thomas, and that if he did not have express authority from plaintiff to make the deal relied upon by them, then he had the implied power and that he acted within the scope and apparent scope of his authority when he made the settlement and executed the release; they further alleged that plaintiff had ratified and confirmed the acts of said Moore in making the settlement and executing the release, stating sufficient reasons, if proven to establish that fact.

The case was tried to a jury on five special issues. The issues and their answers stated in narrative form were: (1) Hugh E. Moore did not have authority from plaintiff to include in the settlement with Thomas the guaranty originally made by Thomas on the original Hardin indebtedness, when he accepted the $3,600 from Mrs. Stringer and executed the assignment and release. (2) It was the intention of both Moore and the defendant to exclude the liability of Thomas on the guaranty of

the original indebtedness, when Moore accepted the $3,600 payment made by Mrs. Stringer and executed the assignment and release to Thomas. The third issue reads: "Do you find from a preponderance of the evidence that the words 'interest upon' contained in the second or third line from the end of the first paragraph of the release executed by the witness Moore, at the time the $3,600.00 payment was made, were inserted therein by mutual mistake of both the witness Moore and John W. Thomas?" Answer: "It was inserted by mutual mistake." (4) The officers of plaintiff first discovered that the release executed by Moore when the $3,600 was paid, contained the words "except liability as guarantor on a certain written guaranty guaranteeing the Baptist Foundation of Texas the payment of interest on a certain $75,000.00 obligation", on about January 24, 1937. (5) The plaintiff did not ratify the acts of Moore in executing the release after it learned of the contents thereof.

Upon the verdict rendered, the court entered judgment for plaintiff; motion for new trial being overruled, defendant, Thomas, has perfected this appeal.

Five propositions based on sufficient assignments of error are presented in defendant Thomas' briefs. They are in effect:

1. The court erred in refusing to give to the jury an instructed verdict in favor of defendant.

2. The plaintiff having previously appointed J. W. Nash to liquidate the assets of the failed bank, and by a resolution enumerated his powers and duties, and placed a certified copy of said resolution of record in Wichita County, and he having resigned and Hugh E. Moore having succeeded him as such liquidating agent, it was error for the court to refuse to admit in evidence a copy of the recorded resolution, which would have tended to show the authority conferred upon Moore.

3. The court erred in refusing to set aside the finding of the jury, to the effect that it was the intention of Moore and Thomas at the time of the execution of the release relied upon by the latter to exclude therefrom the liability of Thomas on the note and guaranty sued on in this case, since there was no testimony to support the allegation of mutual mistake.

4. The finding of the jury that Moore did not have authority to execute the release relied upon by Thomas was so opposed to the preponderance of the evidence as to show that the verdict rendered was actuated by passion, prejudice or some undue influence, and should have been set aside by the court.

5. The court erred in not setting aside the finding of the jury that plaintiff did not ratify the acts of Moore in executing the release relied upon by Thomas, because such finding was against the preponderance of the evidence and showed it was actuated by passion, prejudice or some undue influence.

We have previously stated much of the historical background of the various transactions out of which grew the controversy now before us.

By his first proposition, the defendant, Thomas, insists that the court should have given a summary instruction to the jury for a finding in his favor. If the release, relied upon by Thomas, had not been contested or successfully attacked by plaintiff in its pleadings and testimony offered, its wording would have justified the giving of a peremptory instruction in Thomas' favor. We have seen that plaintiff alleged, among other things, that the release was executed by Moore through a mutual mistake of the parties, and there is evidence in the record to support the allegation. This we shall discuss under the assignment which challenges the sufficiency of that evidence to raise an issue of mutual mistake.

The release is in the form of a letter from the plaintiff, acting through Moore, and reads as follows:

"Wichita Falls, Texas
"July 21, 1936.
"Mrs. Sue Stringer, Wichita Falls, Texas.

"Dear Mrs. Stringer: In consideration of the purchase by you of the note which we hold against John W. Thomas, we have assigned said note to you, without recourse; and we further release John W. Thomas from any and all liability owing to the Baptist Foundation of Texas, either as maker or endorser, direct or contingent, except liability as guarantor on a certain written guaranty, guaranteeing to the Baptist Foundation of Texas the payment of interest upon a certain $75,000.00 obligation, wherein John W. Thomas and others have signed same as guarantors.

"Witness the hand and seal of the Baptist Foundation of Texas, this the 21st day of July, A. D. 1936.

"Baptist Foundation of Texas.
"By: Hugh E. Moore, Agent."

It was contended by plaintiff that the release, as written, would have been in conformity with the oral agreement made, had it not contained the words "interest upon", etc., that is, to omit the two words quoted, it would have read with reference to the release, "And we further release John W. Thomas from any and all liability owing to the Baptist Foundation of Texas, either as maker or endorser, direct or contingent, except as guarantor on a certain written guaranty, guaranteeing to the Baptist Foundation of Texas the payment of a certain $75,000.00 obligation, wherein John W. Thomas and others have signed same as guarantors."

The court submitted to the jury a special issue inquiring if those two words, "interest upon", were inserted in the release by a mutual mistake of both Thomas and the witness, Moore, and the inquiry was answered in the affirmative. There was ample testimony offered to justify the submission of that issue. It is a well settled rule of law in this State that to justify the court in taking a question of fact from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. Lee v. Railway Co., 89 Tex. 583, 588, 36 S.W. 63; Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S.W. 399. The jury found against Thomas' contentions in this respect. There is nothing in the record to indicate that such finding was prompted by anything other than the evidence before the court. It cannot be said, under such conditions, that the evidence was of such a character as that there was no room for ordinary minds to differ as to the conclusion reached. We shall presently show that we think the evidence strongly tended to show that the release relied upon was not drafted as agreed upon between the parties. There is no merit in the assignment and it must be overruled.

The second proposition presents an alleged error by the trial court, in refusing to permit Thomas to introduce in evidence the resolution of plaintiff's Board of Directors, in which J. W. Nash was named as liquidating agent for it, and defined his power and authority relating to the liquidation. The testimony was offered upon the theory that Nash had been designated as liquidating agent, and had served two years and resigned, and that Moore, with whom Thomas had dealt, had been subsequently acting as liquidating agent, and that the recorded resolution tendered would be a circumstance tending to show the authority of Moore.

The bill of exception reserved to the ruling of the court contains the portion of the resolution which Thomas proposed to introduce. It purported to be the minutes of the plaintiff, in which Nash was appointed and his duties defined. Among those matters entrusted to him were: "(Nash) Shall have full authority in the handling of such assets (of the liquidating bank belonging to plaintiff) with full power in the collection of notes and indebtedness, and in the extensions of any notes, and taking additional security, or in the substitution of security, and in the settlement of all claims and suits, and in effecting compromises of any disputes or controversies with reference thereto, so long as the amount in dispute or the amount of such indebtedness does not exceed the sum of $10,000. * * *"

About two years after Nash was named as liquidating agent, he reported to plaintiff that he did not consider the matter would justify his continuation in that position, and his resignation was tendered. Plaintiff accepted his resignation, and took over the remaining assets from Nash.

Mr. Moore was an employee under Mr. Mason, the executive secretary of plaintiff, and from that time on, plaintiff undertook to handle the liquidation from the Dallas office. Moore was sent to Wichita Falls often to look after particular matters relating to the debts and securities, and was, by a resolution passed by the Directors, designated liquidating agent, with specific duties set out in the resolution appointing him. These duties were materially different from those given Nash. The resolutions naming Moore as liquidating agent were not placed of record, nor did Thomas have any knowledge of their contents, except insofar as the duties of Moore were imparted to him before and at the time the release was executed.

The testimony shows that Thomas had become insolvent and owed approximately $250,000, and a former business associate, Mr. Mytenger, had been aiding him, in an effort to bring about an adjustment of his debts, with creditors, on a basis of approximately 10 cents on the dollar. Shortly prior to the time the release in question was executed, Mytenger went to Dallas and saw Mason and discussed the indebtedness

of Thomas to plaintiff in the presence of Moore, with a view to bringing about a similar settlement to those he had made with other creditors. Mason testified he then told Mytenger that the plaintiff had paid $4,000 for the $36,000 note owing by Thomas, and that they did not want to accept less than the amount paid. He said he told Mytenger in that conversation that the settlement of the larger note would not include the $4,000 escrow note in the City National Bank (the note sued on here). Mytenger replied he and Thomas understood that the $4,000 obligation would have to be exempted out of any settlement made. Mytenger was then told that Moore would be at Wichita Falls the next week on other matters, and that he would report to him at that time.

A resolution of the Board of Directors was introduced, showing Nash, Mason and Moore had appraised certain assets and authorized Moore to sell them at those appraised prices. One of those appraisals was the $36,000 note valued at $4,000. That on the date the release was executed by Moore, he had found he could not get the $4,000 appraised value and had called Mason on the telephone for instructions as to whether or not to accept $3,600.

Hugh E. Moore testified relative to his authority in regard to the transaction, as far as it relates to the point under consideration, in substance: That he went to Wichita Falls a day or so before the release was executed on that, and other matters in connection with the business of plaintiff, he met Mr. Mytenger and perhaps Mr. Stringer at Mr. Leslie Humphrey's office; he told them he had left Dallas with instructions not to accept less than $4,000.00. They discussed at length the $36,000.00 note and he was finally offered only $3,600.00 for it, and that he went out and called Mr. Mason and procured authority to accept it. When he went back to attorney Humphrey's office, Thomas was there. Moore told them he had gotten permission to accept the $3,600.-00. Thomas said at that time he wanted a release. Moore said he told Thomas, "I can't give you a release of the Hardin guaranty (the debt sued on); that's an item that doesn't come until January, 1937; and is a written contract between the various signers and the Baptist Foundation, and I have no authority to make any compromise or any settlement of that Hardin guaranty." Moore testified further that

he did not take Mr. Nash's place, but was working for plaintiff and looked after the liquidation; that on the occasion the release was executed, he was not there to take the place of Nash or any other person, but handled the liquidation and had many matters in connection with it to attend to. He said his duties were defined in the minutes of the plaintiff, and that he was not armed with the authority Nash had, at all.

Mr. Leslie Humphrey, the attorney who wrote the release, was called by Thomas as a witness; and having said that he had served as attorney for Mrs. Thomas, wife of John W. Thomas, in previous matters, as well also for plaintiff, and in this matter represented both, including Mrs. Sue Stringer, and testified to matters that took place in his office, insofar as they pertain to the knowledge Thomas had of Moore's authority, substantially as follows: During the negotiations between Thomas and Moore in his presence, Thomas advised Moore that the $3,600 would be paid upon the condition that the note held by plaintiff would be transferred to Mrs. Sue Stringer, "and that he (Thomas) was to secure a complete and unconditional release of all other obligations owing to the Baptist Foundation of Texas. In reply to this statement or request, Mr. Moore advised him that he would not release him upon the guaranty, or words to that effect."

Defendant, Thomas, was recalled to the witness stand after Moore had testified, but was not asked about the matters testified to by Moore and Humphrey, in which they said Moore had told Thomas he could not release him from the escrow obligation. He had previously testified on his direct examination to a conversation between himself and Mr. Humphrey in Moore's presence, which is at variance with what was said by Moore and Humphrey.

Defendant, Thomas, then called the Deputy County Clerk and offered to prove the recorded resolution appointing and defining the duties of Nash, and upon objection by plaintiff the court refused to admit it in evidence, and that ruling is the basis for the proposition now under consideration.

As shown, Thomas, through his agent, Mytenger, had information from Mason that plaintiff could not and would not include the guaranty agreement in any settlement for the purchase of the $36,000 note by Mrs. Sue Stringer. He also was told by Moore, and this is corroborated by Humphrey, that he, Moore, could not settle

the guaranty obligation, that it was not yet due. The testimony of Moore, verified by the minutes of the board of directors, was that he had only the power to settle the $36,000 note, and that his duties and powers were different from those of Nash. These matters were in no way contradicted, and Thomas sought to introduce the resolution defining the duties and powers of Nash, as a circumstance tending to show that Moore had the same authority. We do not think the court committed a reversible error in excluding it under the circumstances.

We are cited by defendant, Thomas, to the case of Hull v. Railway Co., 66 Tex. 619, 2 S.W. 831, by the Supreme Court, in which it is said [page 832]: " * * * the frequent exercise of power [by an agent], which from its nature must have been known to the principal, may be regarded by persons dealing with the agent as sufficient evidence of the real existence of the power which the agent assumes to exercise."

It was not shown in the case at bar that Moore had previously exercised the power and authority given to Nash by the resolution sought to be introduced. Likewise, Pecos River Ry. Co. v. Latham, 40 Tex. Civ.App. 78, 88 S.W. 392, writ denied, in which a similar ruling is made, but from what we have said we do not consider them controlling.

It is urged that case of White v. San Antonio Waterworks Co., 9 Tex.Civ.App. 465, 29 S.W. 252, is decisive of the question as contended for by defendant. In that case, Willis was the engineer in charge of the Waterworks Company's station, and had employed the plaintiff as a helper and while performing those duties he received an injury. It was contended by the defendant that Willis had no authority to employ helpers and bind it by his acts. In the opinion it is said [page 254]:

"Plaintiff offered, also, to prove by a witness, Heiniger, that the person who held the same position before Willis, and discharging the same duties at the pump house, employed hands to work there for defendant the Waterworks Company, with defendant's knowledge. The theory upon which the evidence was offered was that it was competent as tending to show that the person holding the position Willis did had authority to employ hands. We think the testimony was admissible. If the relation of the two persons to the company were the same as evidenced by the duties they discharged, and the company recognized the predecessor as having that authority, it would justify the inference, in the absence of an express contract defining his powers, that he was clothed with the same authority."

We have quoted the part of the opinion relied upon by the defendant in this case. What we have said relating to the other cases cited is applicable to this one. It will be noted the court predicates the announced rule upon the theory that the two parties were performing the same duties, as well also conditioned that there was no express contract defining the powers of the one for whose act the employer is sought to be held. As before stated, it did not appear that Moore was performing the duties previously performed by Nash, but were different, as testified to by Moore. Also it appears that the plaintiff had expressly defined Moore's duties and powers, and that insofar as applicable to what he did in this instance, were made known to Thomas. These are the distinguishing features we see in the cases cited, from the one at bar.

We come now to a consideration of what we deem the most vital point in the case, that of the court's right to reform the instrument relied upon by Thomas, to conform to the agreement had between the parties prior to its execution, because of mutual mistake in its preparation.

Under another assignment, we have referred to the testimony of the witnesses which affect this assignment and will not repeat it at length here. There can be no question but that the instrument intended to release Thomas from further liability to plaintiff as to the $36,000 note, for that note was assigned to Mrs. Stringer; indeed, there was not any occasion for plaintiff to declare it would never claim anything against Thomas on that account, but Thomas wanted a release. Aside from the note mentioned, Thomas had previously executed two guaranty contracts relating to the Hardin note; one for a limited liability not to exceed $4,000 on the principal, and another joint and several liability for the interest on the whole obligation. The record clearly discloses that all interest had been paid and that Thomas had paid his proportionate part, and that both plaintiff and Thomas knew this at the time the instrument in controversy was executed. Humphrey, who drew the instrument, did

not know it. There could have been no necessity, then, to except that obligation from the release.

Mason had told Mytenger, Thomas' agent, that the guaranty on the principal obligation could not be released or affected by a settlement of the $36,000 note. Thomas is chargeable with notice of what Mytenger knew. At the meeting in Humphrey's office, Thomas requested a complete release from all obligations held by plaintiff, and Moore advised him in the presence of Humphrey, this could not be done, since he had no authority to release him from the principal guaranty contract. Humphrey also testified to this. Thomas' testimony relative to what took place in Humphrey's office was in substance that when Moore came to Wichita Falls, they met in the lawyer's office to work out their deal and have necessary papers drawn. He said that Mr. Humphrey told him in Moore's presence that plaintiff had agreed to settle for $3,600, and that he (Thomas) would agree to it but wanted a release from everything, and Mr. Humphrey replied that they had agreed to release him from everything except the interest obligation on a certain $75,000 note. He said Mr. Humphrey thereupon dictated the instrument to his stenographer in the presence of all parties. That Moore took it out of the office and stayed a while and signed it. Mr. Humphrey testified that he heard the conversations between Moore and Thomas, when the latter requested a complete release, and Moore's reply that he could not release the principal obligation, and that Moore gave the reasons why he could not do so. That he had previously represented Mrs. Thomas, and was endeavoring to represent Mrs. Stringer in getting an assignment of the note purchased by her, and that he had many times represented plaintiff in connection with collections of interest payments on the principal guaranty note. The interest obligation was definitely fixed in his mind, because of his previous connections with it, and he also knew in a general way there was an outstanding principal obligation, that when he wrote the instrument he was not conscious of Thomas' liability on it, nor that that instrument was involved. He dictated the release, and, as indicated by it, the interest obligation was excepted from the release, and that he intended to so release that obligation when he dictated the instrument.

It is also indisputably shown by the testimony that plaintiff would assign to Mrs. Stringer the note or notes to be compromised between the parties. That when the deal was closed, it did assign to Mrs. Stringer the $36,000 note. Thomas did not request the surrender or transfer of the note sued on here, nor was it mentioned in connection with a delivery or surrender.

The defendant, Thomas, testified that he had a conversation with Mr. Moore about the first of the year (1937), at a time when they were making some adjustments with other parties, and that Moore said there was a mistake in the release which he had given, that he did not intend that the release should cover the principal obligation. Thomas did not state in that connection what, if anything, he said when Moore claimed a mistake in the release. Thomas testified that he received a letter from plaintiff, which was identified by him as one dated January 19, 1937, in which plaintiff was reminding him that the assets had not paid the principal debt upon which he was a guarantor, and asked him to be ready to take care of it on the 25th of January, when a man would call on him. He also said they wrote him later that they were going to sue him. He did not reply to either letter.

The jury found in response to an issue that the words "interest upon" the guaranty obligation, were inserted in the release by a mutual mistake of the parties, and under another issue that they intended to except and exclude the obligation sued on.

We are not unmindful of the general rule of law so well established in this State, to the effect that the courts will in equity reform written instruments to conform to the intentions of the parties, when the error is the result of a mistake on the part of both or all parties concerned. To adhere to a strict application of that rule would in many instances defeat the purpose for which it was made. It often happens, as it has in this case, that the instrument in controversy does not speak the true intentions of the parties as agreed upon prior thereto, and the failure of the instrument is the result of a mistake. It is but natural that the opposite party will insist in court that the instrument speaks the true agreement, if this were not true they would have no lawsuit. The test, we think, is to determine what

the parties intended the instrument should contain prior to and at the time of its execution. If it be conceded that these parties intended that the written release should except the guaranty obligation, and not as it did, except the interest thereon, and both entered into its preparation, execution and delivery, and that neither detected the error at the time, clearly it would be a mutual mistake and be the subject of reformation. It may be also further said that if the one to be benefited by the error contained in the instrument knows of such provision at the time, and that it was not according to their previous agreement, and conceals from the other the mistake so made, his acts amount to a legal fraud, which, when taken in connection with the mistake on the part of the other party, will entitle the latter to equitable relief. St. Paul Fire & Marine Ins. Co. v. Culwell, Tex.Com.App., 62 S.W.2d 100, and authorities there cited. See, also, Anderson v. Walton, Tex.Civ.App., 26 S.W.2d 356, and cases cited.

Thomas knew through Mytenger, his agent, the obligation sued on would not be released under a settlement of the $36,000 note, and if he entertained hopes that it would be released by Moore, at the time the release was prepared, his mind was disabused of that fact by the information given him at the time, and he could not reasonably expect that his demands would be complied with. It is clear that the release was not drawn in accordance with the previous agreement. There was no outstanding interest obligation to be excepted; it had been paid, both parties knew it. The attorney and representative of the parties, whom they each entrusted with drafting the instrument, did not know the interest obligation was paid. He made the mistake in excepting the interest on the principal guaranty, instead of the guaranty obligation itself. His acts are equivalent to the parties drawing the release themselves, and his error became the error of both. Their former negotiations and those at the time, show Moore had declined to release the principal guaranty, but the instrument did that very thing. Bates v. Lefforge, Tex.Civ.App., 42 S.W.2d 806. The case cited was reversed by the Supreme Court, 63 S.W.2d 360, on other grounds, but the conclusions as to mutual mistake made by the Court of Civil Appeals, were not criticised. It is said in the Court of Civil Appeals decision [page 808], "The mistake made by Pritchett [the scrivener] representing both parties, in failing to reduce the agreement to writing as agreed on, was a mutual mistake of the parties, and entitled the plaintiff to a reformation of the contract." The case of Kelley v. Ward, 94 Tex. 289, 60 S.W. 311, supports the rule announced above.

Sun Co. v. Petroleum Co., 5 Cir., 248 F. 623, in which case certiorari was denied by the U. S. Sup. Ct., 247 U.S. 514, 38 S.Ct. 580, 62 L.Ed. 1244, is a case in which the right of the court to grant equitable relief in the reformation of a written instrument was involved. The rule is there announced in this language [page 627]: "It was incumbent on the defendant [plaintiff in this case] to prove that before the written instrument was signed the alleged different provision which is sought to be substituted in the place of the one found in that instrument was verbally agreed on by the parties. * * *" Again, applicable to Humphrey's drafting the release, it is said in the last cited case: "The option provision, as it is found in the written instrument evidencing the contract, was either dictated by the defendant's attorney, an experienced and capable lawyer, or was examined and approved by him. It is not explained how it happened that such a lawyer could have approved the option provision as it was written, if he had been informed that what his client's representative had assented to was a distinctly different provision."

We have seen that immediately before the release was dictated, Thomas had requested a release and Moore had definitely declined to give it, stating he had no authority to do so. Just why a debt which both of the parties knew had been paid was especially excepted from the release is not explained, except by Mr. Humphrey, that is he had in mind the interest debt which he had formerly handled for plaintiff. Clearly the exception of that debt was an inadvertence on his part. Having excepted it from the release, he says he was not conscious at the time of the debt which the parties referred to, immediately prior to the drafting of the release. But he knew of the interest obligation and thought that was the one discussed by them.

Under such conditions it is held in Ferrell v. Delano, Tex.Civ.App., 144 S.W. 1039, where the conveyancer failed to write a deed according to the oral agreement made between the parties at the time, and the parties acted upon the instrument

as written, they were entitled to a reformation in equity, so that the deed would speak their intentions.

■ We do not think the court erred in refusing to set aside and disregard the answer of the jury to the special issue relating to the mutual mistake, and the assignment must be overruled.

Other propositions are presented that the court should have disregarded the findings of the jury that Moore was without authority to release the debt sued on and that plaintiff did not subsequently ratify his acts in doing so.

■ It is claimed by Thomas that since Moore was acting as liquidating agent for plaintiff, he at least had the apparent authority to make settlement of the note sued on and to release it after payment. There would be merit in the contention if it was not shown by the uncontradicted proof that Thomas knew Moore could not release that debt. Moore's implied authority will not prevail over positive proof to the contrary.

■ Relating to ratification, the evidence presents an issue of fact. This was determined by the jury against Thomas. The issue as submitted may be said to have embraced a mixed question of law and fact, but no objection to it on this ground was presented, either before it was submitted nor in motion for new trial, and if there was error shown on this point it was waived.

When the release was prepared and executed the original was given to Thomas and a copy to Moore. The latter testified that when he received the copy he put it in his file and went to work on other matters, remaining in Wichita Falls a couple of days afterwards. He said before he signed it, he "glanced" at it and saw it recited the assignment to Mrs. Stringer was without recourse and did not read any further. That he had the utmost confidence in Mr. Humphrey, who wrote the instrument, and that Humphrey knew the agreement expressed in his presence, and that the principal debt was excepted. The witness said he thought nothing more about it. He thought Humphrey was representing him as well as Thomas. Witness said he carried the copy back to Dallas and placed it in the files. The officers of plaintiff had access to the files. He told Mason he had made a settlement of the matter as per his instructions and had the $3,600. He endorsed the check as liquidating agent and deposited it. He did not show the copy of assignment and release to anyone in the Dallas office. He said he was so sure the matter had been closed as they had agreed upon that he did not deem it necessary to explain it all to Mr. Mason, nor to thereafter go through the files and check up on what he had done. He had many other duties to perform which consumed his time and had no reason to believe he had made a mistake. The first time the witness ever knew that Thomas was claiming a release of the principal guaranty was after the letters were written to Thomas demanding payment and he had gone to Wichita Falls on January 24, 1937, to make the collection.

■ There is nothing to indicate that Mason or any other officer of plaintiff had actual knowledge of the contents of the release. Whether under the facts they were chargeable with constructive notice thereof was an issue of fact and this was found on substantial evidence against Thomas' contention, and the trial court did not abuse his discretion in declining to disregard that part of the verdict.

We see not error in this record which would require a reversal of the court's judgment and it is therefore affirmed.